UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UTGR, Inc. d/b/a Twin River,<br><br>                    Plaintiff,<br><br>          v.<br><br>Mutuel/Gaming Clerks Union<br>of Rhode Island, Local 334,<br>Service Employees<br>International Union,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)    C.A. No.   09-046 S<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

In this action, Plaintiff UTGR, Inc. d/b/a Twin River ("Twin River") seeks to vacate an arbitration award pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Defendant, Mutuel/Gaming Clerks Union of Rhode Island, Local 334, Service Employees International Union (the "Union") has objected and alternatively moved to confirm the award. The parties have filed cross-motions for summary judgment. Twin River offers several reasons as to why this Court should vacate the award and is no doubt hoping lady luck is on its side, but in the end its arguments come up 'snake eyes'. For the reasons stated below, Twin River's motion is denied and the Union's motion is granted.

---

[1] On June 23, 2009, Twin River filed for chapter 11 bankruptcy. Because this action was commenced by Twin River and not against it, the automatic stay does not prevent the issuance of this decision. See 11 U.S.C. § 362.

I.   Background

The following facts are undisputed as they were found by the arbitrator.   Twin River operates a gambling and greyhound racing track facility located in Lincoln, Rhode Island (formerly known as Lincoln Park).   In addition to live greyhound racing, Twin River offers betting on simulcast dog and horse racing from other tracks around the country, and betting at video lottery terminals.[2]   Live dog racing under the pari-mutuel system is offered on Mondays and Wednesdays and doubleheaders on Fridays and Saturdays, but not Sundays.   Twin River does offer betting on simulcast racing on Sundays.   Depending on the season, Twin River receives approximately 15,000 to 16,000 patrons daily, with Fridays, Saturdays, Sundays and holiday Mondays being the busiest days. Twin River derives 80% to 90% of its revenues from gaming and less than 10% from racing.

Twin River employees represented by the Union work in one of two departments: the Mutuel Department or the Gaming Department. The Mutuel Department employees only perform work associated with live dog racing and simulcast events and the Gaming Department employees only perform work associated with gaming or the VLTs.

---

[2]  A video lottery terminal or VLT is essentially a computerized slot machine that allows betting on various card games through a video screen interface.   Instead of a cash payout, a VLT handles all winnings by issuing a computer generated ticket.

Mutuel Department and Gaming Department employees do not perform each others' work duties while working on the same shift.

The disagreement in this case is over whether the collective bargaining agreement ("CBA") between Twin River and its Mutuel and Gaming Department employees requires Twin River to pay a rate of time and one half for work on Sundays. Twin River (and its predecessor) since at least 1991 paid all Union employees time and a half on Sunday, but abruptly stopped this practice in March 2008.[3]

The Union subsequently filed a grievance and after attempts at a negotiated settlement proved unsuccessful, the parties submitted the matter for binding arbitration pursuant to the CBA. The arbitration was conducted over two days, September 12, 2008 and November 6, 2008. The issues presented to the arbitrator were:

1.   Is the grievance arbitrable?

2.   If so, did the Employer violate the Agreement by its March 8, 2008 decision not to pay time and one-half to Union represented employees for work on Sundays?

3.   If so, what shall be the remedy?

On January 22, 2009, Arbitrator James S. Cooper made an award for the Union that held Twin River violated the CBA by not paying time and one-half to Union employees for work on Sundays. He found

---

[3] Interestingly, Twin River continues to pay Mutuel Department employees time and half on Sundays, but for gratuitous reasons and not because of any legal duty -- so says the General Manager.

3

that the CBA requires "[a]ll the employees covered by this Agreement shall be paid in accordance with State law if they work on a Sunday." See Arbitrator's Opinion and Award at p. 6 (Doc 1-4). In determining what "State law" meant, the arbitrator considered the Rhode Island General Laws regarding payment for Sunday work. See R.I. Gen. Laws §§ 25-3-1 et seq. He noted that while § 25-3-3(a) provides: "[w]ork performed by employees on Sundays and holidays must be paid for at least one and one-half (1 1/2) times the normal rate of pay for the work performed," the term employee does not include an individual employed by a "recreational facility (except health clubs)." R.I. Gen. Laws § 25-3-1(3)(iv). However, instead of analyzing the dispute under these statutes, the arbitrator relied on § 25-3-2, which specifically addresses corporations that conduct dog racing events under the parimutuel system and which requires those entities to "compensate the necessary persons to conduct the event on Sundays and/or holidays for at least one and one-half (1 1/2) times the normal rate of pay for the work performed." Id. at § 25-3-2.[4]

Framing the analysis around § 25-3-2, the arbitrator then decided whether Twin River: (1) did in fact conduct dog racing events under the pari-mutuel system on Sundays; and (2) whether the

---

[4] In selecting § 25-3-2, the arbitrator correctly adhered to the well known cannon of statutory construction that when confronted with competing statutory provisions that cannot be harmonized, the specific governs the general. See Felkner v. Chariho Reg'l Sch. Comm., 968 A.2d 865, 870 (R.I. 2009).

Union employees are necessary for conducting those events. The arbitrator answered the first question in the affirmative because Twin River offers betting on simulcast dog racing events even though it does not hold live racing on Sundays. As to the second question, the arbitrator ultimately determined that "it is all of the employees together who keep Twin River in operation and who are therefore 'necessary employees to conduct the event.'" See Opinion and Award p. 13 (Doc. 1-4).

Now betting on the long shot, Twin River comes to this Court arguing that the arbitrator's award is in manifest disregard of the law and represents his own brand of industrial justice.

II. Discussion

"Judicial review of an arbitration award is among the narrowest known in the law." Asociacion de Empleados del Estado Libre Asociado de Puerto Rico v. Union Internacional de Trabajadores de la Industria De Automoviles, 559 F.3d 44, 47 (1st Cir. 2009) (quoting Maine Cent. R.R. Co. v. Bhd. of Maintenance of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989)). Only because of unusual circumstances will a Court undo the binding effect of an arbitrator's award. Id. "Accordingly, disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000).

A district court does not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award, <u>Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico</u>, 903 F.2d 857, 860 (1st Cir. 1990), and will not overturn an arbitrator's decision unless the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." <u>Wheelabrator Envirotech Operating Servs. Inc. v. Mass. Laborers Dist. Council Local 1144</u>, 88 F.3d 40, 44 (1st Cir. 1996) (internal citation and quotation omitted); <u>see also</u> <u>United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. 29, 36 (1987) (stating that the arbitral decision must draw its essence from the collective bargaining agreement and a court may not review the merits of the contract dispute). A court reviewing an arbitration award simply "ensure[s] that the arbitrator's decision relies on his interpretation of the contract" and not "his own beliefs of fairness and justice." <u>Advest, Inc. v. McCarthy</u>, 914 F.2d 6, 9 (1st Cir. 1990) (internal citation and quotation omitted).

Twin River's argument that the arbitrator recognized the applicable law and then ignored it is two-fold. First, Twin River takes issue with the arbitrator's conclusion that it conducts dog racing events within the meaning of the statute because it

simulcasts races from other tracks. In essence, Twin River is arguing that the arbitrator's reading of § 25-3-2 was overly broad and instead should have been read more narrowly to only encompass live racing events. Such an argument is unavailing because broad or narrow an arbitrator's decision "must be simply in the realm of what a judge might decide." Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO v. Stop & Shop Cos., 776 F.2d 19, 22 (1st Cir. 1985) (emphasis added). Because Twin River allows its patrons to bet on races via simulcast, it is certainly plausible to say that it is conducting dog racing events on Sundays within the meaning of § 25-3-2.

Twin River's second argument is that the arbitrator reached an illogical result, based on his factual findings, by concluding that gaming employees are necessary to the conduct of racing events. This argument raises form over substance as it essentially focuses on the gaps in the arbitrator's reasoning. See Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1050 (1st Cir. 1977) (a party seeking to vacate an arbitration award must do more than show "gaps" in the arbitrator's reasoning). Here, the arbitrator's decision stated that 80% to 90% of Twin River's revenue comes from gaming and only 10% comes from the mutuel department and that it is all the employees together who keep Twin River in operation. What is lacking in the arbitrator's decision is a statement that the mutuel department depends on the gaming department for its

survival.   However, the lack of such explicit reasoning is of no practical consequence.   "If the court can infer the reasoning of the arbitrator from the facts of the case, the court should confirm the arbitration award." Dist. Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229, 237 (S.D.N.Y. 2003) (citing Burns Int'l Security Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 17 (2d Cir. 1995)).   Given the vast disparity in the revenue each department generates, the arbitrator's conclusion is at least plausible, and frankly quite reasonable.

Despite Twin River's argument to the contrary, this is not a situation where an arbitrator made an unambiguous factual finding that the gaming department employees are "unnecessary" to conducting racing events. Compare Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445, 314 F.3d 29, 34 (1st Cir. 2002); Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 945 (1st Cir. 1988). The arbitrator in this case concluded that gaming and mutuel employees do not perform each others' duties, which is a far cry from finding that gaming department employees serve no function or are not necessary to the conduct of racing events.   The operative term under the statute -- "necessary persons" -- is sufficiently broad to allow for reasonable minds to differ as to its meaning. And the cases make clear that whether this Court would have interpreted "necessary persons" to include employees of the gaming

department is not the appropriate inquiry.  All that matters for purposes of this case is that the arbitrator was arguably applying the CBA and in this case he most certainly was.

Twin River's final argument takes issue with the arbitrator's reference to its past practice of paying employees time and a half on Sundays.  Twin River, however, misunderstands the arbitrator's reference entirely.  At the beginning of the award, the arbitrator concluded that past practice was irrelevant for determining the governing standard because the CBA stated that Sunday pay was determined by state law.  Later, the arbitrator mentioned Twin River's past practice during his analysis of whether gaming employees were necessary for conducting a racing event.  Twin River has seized on this language and contends that it is evidence of the arbitrator saying one thing but doing another.

It is unclear what effect, if any, the arbitrator's passing reference to Twin River's historical practice had on his decision. But if it did factor into the analysis, it was clearly in the context of determining whether gaming department employees were considered necessary for conducting racing events as contemplated by § 25-3-2.  The fact that Twin River paid gaming department employees time and half on Sundays in the past could certainly have relevance on the question of whether they are necessary.  As such, the Court perceives no error in this regard and Twin River's arguments fail to persuade otherwise.

III. Conclusion

For the foregoing reasons, Twin River's Motion for Summary Judgment is DENIED and Mutuel/Gaming Clerks Union of Rhode Island, Local 334's Motion for Summary Judgment is GRANTED and the arbitral award is hereby COMFIRMED.


IT IS SO ORDERED.

_____
WILLIAM E. SMITH
United States District Judge
DATE: 8/6/09