UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
UTGR, Inc. d/b/a Twin River,        )
                                    )
            Plaintiff,              )
                                    )
     v.                             )   C.A. No. 09-046 S
                                    )
Mutuel/Gaming Clerks Union of       )
Rhode Island, Local 334, Service    )
Employees International Union,      )
                                    )
            Defendant.              )
_____ )

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Plaintiff UTGR, Inc. d/b/a Twin River ("Twin River") and Defendant, Mutuel/Gaming Clerks Union of Rhode Island, Local 334, Service Employees International Union ("the Union") arbitrated a dispute concerning the rate of Sunday pay for Twin River's union employees, pursuant to the terms of the collective bargaining agreement ("CBA"). This Court affirmed the Arbitrator's Award, which found that R.I. Gen. Laws § 25-3-2 required Twin River pay its employees time and one-half on Sundays ("premium pay") because Twin River offered simulcast dog racing. See UTGR, Inc. v. Mutuel/Gaming Clerks Union of Rhode Island, C.A. No. 09-046, 2009 WL 2436772 (D.R.I. Aug. 7, 2009).

It is undisputed that Plaintiff complied with the order until September 27, 2009, when it unilaterally ceased simulcast dog racing on Sundays and returned to a regular rate of pay for its employees. In response, Defendant filed a motion to charge Twin River, and several of its corporate officers who are not parties to the suit,[1] with civil contempt for violating the court order. Twin River argues that simulcast dog racing is no longer offered on Sundays and it cannot be held in contempt where the factual and legal basis for the order no longer exists. For the following reasons, the Court agrees that the order was not violated and the Union's motion is denied.

I.   Background

On January 22, 2009, Arbitrator James S. Cooper found that Twin River violated the CBA by not granting premium pay to Union employees for work on Sundays. He found that the CBA requires "[a]ll the employees covered by this Agreement shall be paid in accordance with State law if they work on a Sunday." See Arbitrator's Opinion and Award at p. 6. Relying upon R.I. Gen. Laws § 25-3-2, the Arbitrator found that time and one half must be paid for all "necessary employees" who worked on Sundays

---

[1] Although not parties to the dispute, Defendant moves to hold George Papinier, Craig Eaton, and Gary Green in contempt as corporate officers, together with Twin River. As the Court concludes that Twin River has not violated the order, the Court need not address the propriety of joining these parties in this manner.

2

because simulcast dog racing was a form of pari-mutuel betting. This Court affirmed the Award in all respects.

Effective September 27, 2009, Twin River ceased having pari-mutuel wagering on simulcast dog racing on Sundays and unilaterally sent notice that it would no longer pay time and one half on Sundays. In response, the Union filed the present contempt motion.

## II. Contempt Arising From a Violation of a Court Order

To establish civil contempt, the Union "must show by clear and convincing evidence that a specific order of court has been violated." Palmigiano v. DiPrete, 700 F. Supp. 1180, 1191 (D.R.I. 1988) (citing AMF Inc. v. Jewett, 711 F.2d 1096, 1100 (1st Cir. 1983); Burke v. Guiney, 700 F.2d 767, 769 (1st Cir. 1983)). Specifically, "the proof must establish (1) that the alleged contemnor had notice that he was 'within the order's ambit'; (2) that the order was 'clear and unambiguous'; (3) that the alleged contemnor had the ability to comply; and (4) that the order was indeed violated." United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005) (internal citations omitted).

Often the second and fourth prongs are considered together, such that the Court must find "the putative contemnor has violated an order that is clear and unambiguous." Saccoccia, 433 F.3d at 27 (quoting Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991)). Furthermore, the court "must read any

3

ambiguities or omissions in . . . a court order as redound[ing] to the benefit of the person charged with contempt." NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990) (second alteration in original) (internal quotation marks and citation omitted). The Union can meet its burden if it shows that the order "left no reasonable doubt" that Twin River would be violating its terms by ceasing to pay its union employees premium pay after discontinuing simulcast dog racing on Sundays. Project B.A.S.I.C., 947 F.2d at 17.

In expounding upon the purpose of the "clear and unambiguous" requirement, the First Circuit has described judicial contempt as a power that is "potent" and "deadly," reasoning that "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967) (identifying the specificity requirements of Fed. R. Civ. P. 65(d) as relevant to certain contempt inquiries); see also Sanders v. Air Line Pilots Ass'n, Int'l, 473 F.2d 244, 247 (2d Cir. 1972).

In order to determine whether the Union has met its burden, the first step is to "look to the text of the order to determine whether it is clear." Saccoccia, 433 F.3d at 27. "The test is whether the putative contemnor is 'able to ascertain from the

4

four corners of the order precisely what acts are forbidden.'" Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 76 (1st Cir. 2002) (quoting Gilday v. Dubois, 124 F.3d 277, 282 (1st Cir. 1997)). However, this is not an exercise in the abstract; the "four corners" rule grounds the analysis to determine whether "the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*." Saccoccia, 433 F.3d at 28 (emphasis in original) (citing Perez v. Danbury Hosp., 347 F.3d 419, 424 (2d Cir. 2003) (rejecting district court's finding that an order was clear and unambiguous where the district court "appeared to rule in a vacuum and failed to evaluate whether the order was 'clear and unambiguous' with reference to the conduct in question"). "The purpose of this "four corners" rule is to assist the potential contemnor by narrowly cabining the circumstances in which contempt may be found." Id. at 28. It is because "[t]he consequences that attend the violation of a court order are potentially dire . . . [that] courts must 'read court decrees to mean rather precisely what they say.'" Project B.A.S.I.C., 947 F.2d at 17 (quoting NBA Properties, 895 F.2d at 32).

The plain language of the arbitrator's award provides:

> The Employer shall cease and desist from failing and refusing to pay employees who work on Sunday at the rate of time-and-one-half their regular rate and shall make all employees who have been denied the premium

5

> pay whole for all loss of wages retroactive to March 9, 2008.

Award of Arbitrator.

Twin River appealed and this Court affirmed the award in a written decision. UTGR, 2009 WL 2436772. The Court stated that the arbitrator had to answer "whether Twin River: (1) did in fact conduct dog racing events under the pari-mutuel system on Sundays" in order to rely upon § 25-3-2, which requires:

> [a]ny person, association, or corporation receiving a permit from the division of racing and athletics of the department of business regulation to operate any horse racing, dog racing . . . under the parimutuel system . . . shall compensate the necessary persons to conduct the event on Sundays and/or holidays for at least one and one-half (1 ½) times the normal rate of pay . . . .

R.I. Gen. Laws § 25-3-2.

The Court continued to state that "[t]he arbitrator answered the first question in the affirmative because Twin River offers betting on simulcast dog racing events even though it does not hold live racing on Sundays." UTGR, 2009 WL 2436772 at *2.

The Union argues that the order unequivocally demands that Twin River pay the premium rate to its employees on Sundays, and that the precise conduct that is proscribed is paying employees a regular rate on Sundays. However, the Union offers an overly simplistic reading of the order. The order is silent regarding Twin River's obligations in the event that simulcast dog racing ceases on Sundays. If the Court were to adopt the Union's view,

6

paying time and one-half would be an untethered command, without basis in fact or law.[2]  However, the order cannot be considered only in the abstract or in a vacuum, without consideration for the arbitrator's application of § 25-3-2, the law upon which the order rests.  Section 25-3-2 is premised upon the existence of pari-mutuel betting on Sundays; a premise that no longer applies, leaving an ambiguous situation.

At hearing, Defendant argued that Plaintiff should have, and failed to, move the Court to dissolve the decree in the first instance.  The Court agrees that this would have been a more prudent course of action.  Twin River should have sought relief from the order pursuant to Rule 60(b)(5) on the basis that the application of the order was no longer equitable. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 441 (2004) ("The Rule encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances."); see also Restatement (Second) Judgments § 73 (1982) ("[A] judgment may be set aside or modified if . . . [t]here has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust.").  This does not, however, translate automatically into a finding of contempt.

---

[2] Twin River filed for Chapter 11 bankruptcy on June 23, 2009; however, because Twin River commenced this action to vacate the arbitrator's award, the automatic stay provisions in Chapter 11 proceedings do not affect the Court's ability to rule on the present motion.

The Court concludes that the four corners of the order do not make Plaintiff's obligations unambiguously clear, in the event that simulcast dog racing is no longer offered on Sundays. While it is true that Plaintiff should have been proactive in resolving this ambiguity, because a valid order remains in effect, the circumstances have clearly changed and no contempt may be found as a result of Twin River's actions.

III. Conclusion

The Union is not without a remedy if it feels that its members are entitled to premium pay despite the change in circumstance.  The Union may file a grievance per the CBA, as it did when simulcast dog racing was offered.  While the Union may or may not be successful in seeking such a remedy (that is a matter for the arbitrator to decide), the Union has not carried its burden to show by clear and convincing evidence that Twin River violated the court order and should be held in contempt. Therefore, Defendant's motion is denied.


IT IS SO ORDERED.


/s/ William E. Smith
William E. Smith
United States District Judge
Date:  January 12, 2010